Exhibits

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION                    GAVIN NEWSOM, GOVERNOR

**BOARD OF PAROLE HEARINGS**
EXECUTIVE OFFICE

P.O. Box 4036
Sacramento, CA 95812-4036



# COMPREHENSIVE RISK ASSESSMENT
# BOARD OF PAROLE HEARINGS
# FORENSIC ASSESSMENT DIVISION
# CALIFORNIA MEDICAL FACILITY

## IDENTIFYING INFORMATION

| | |
|---|---|
| Inmate Name: | **MAGEE, Ruchell** |
| CDCR Number: | **A92051** |
| DOB (current age): | **3/16/1939 (Age 82)** |
| MEPD: | **1/23/1982** |
| EPRD: | **N/A** |
| YPED: | **N/A** |
| EPED: | **3/16/1999** |
| Latest Admission Date: | **8/31/1965** |
| Life Term Start Date: | **1/23/1975** |
| Commitment Offense: | **Kidnap/Ransom/Robbery (PC 209)** |
| County of Commitment: | **Los Angeles and Santa Clara** |
| Placement Score: | **185** |
| CDCR Forensic Psychologist: | **B. Levin, Psy.D.** |

## SOURCES OF INFORMATION AND SCOPE OF RISK ASSESSMENT

The evaluator considered relevant information in the inmate's Unit Health Record and Central File, including the confidential section, and incorporated findings from a structured clinical interview and administration of standardized approaches to risk assessment. Due to COVID-19 pandemic (and the health and safety restrictions imposed), a face to face interview could not be conducted. Interview with Mr. Magee was attempted by this examiner via Microsoft Teams on April 30, 2021. He was informed that the interview was not confidential, that he had the right not to participate in the examination, and that a written report would be submitted to BPH. He appeared to understand the nature of the evaluation and the possible consequences of the interview to the best of his ability. Based upon the inmate's responses to the examiner's questions, it was the conclusion of the undersigned that it was <u>not</u> necessary to use auxiliary aids or services to achieve effective communication. A language interpreter was not needed. The undersigned evaluator reviewed the Disability and Effective Communications System (DECS) system, and 1073, which reflected adequate cognitive functioning and no request for special accommodations to achieve effective communication (per CDATS; 7/31/2002). [1]

---

[1] FAD Comprehensive and Subsequent Risk Assessments are administered by licensed psychologists and reviewed by Senior Psychologist supervisors.


Exhibit B

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION                    GAVIN NEWSOM, GOVERNOR

**BOARD OF PAROLE HEARINGS**
EXECUTIVE OFFICE
P.O. Box 4036
Sacramento, CA 95812-4036



Following the informed consent portion of the evaluation, Mr. Magee declined to participate in the interview portion of the evaluation. He specifically stated, "I've been through this evaluation already. At this point I request that I get a medical discharge instead of parole. I've been down for 56 years or more. I've got this COVID shit. All I can see that the Board can do for me is to give me a medical discharge." His refusal was also witnessed by Custody Officer R. Cuellar. A refusal chrono was subsequently submitted to the CMF Lifer desk regarding this refusal.

## PSYCHOSOCIAL DEVELOPMENT

<u>Please Note:</u> Because Mr. Magee refused to participate in the evaluation, the evaluator was entirely reliant on the information in Mr. Magee's c-file for information regarding his psychosocial history.

<u>CHILD AND ADOLESCENT DEVELOPMENT:</u>

Mr. Magee previously described some exposure to adverse experiences in his youth. He was an only child born in Louisiana, and primarily raised by his mother and stepfather in a town of 1600 residents. He stated that his biological father died when he was five. He denied any experience of abuse or neglect, and stated that he was well-provided for.

Mr. Magee did previously describe some involvement in negative behavior during his youth. He reported that he started breaking curfew around age ten or twelve, and stole approximately $20 from a woman he was working for when he was twelve. He stated that he was in a single fight at age thirteen. His records also note a twelve-year-sentence related to an attempted aggravated rape conviction from 1956, when he was sixteen. He stated in his 2018 evaluation that this was the result of his "fooling around" with an adult, white, married female who "got angry at him because he refused to continue his involvement with her." He stated that he did not get an opportunity to testify in his case.

He previously reported that he disliked school, but never had a specific learning disability. He reported that he dropped out around seventh grade, and he has yet to attain a GED or diploma.

<u>ADULT DEVELOPMENT:</u>

Mr. Magee has been incarcerated for the vast majority of his adult life. For this reason, much of his adult functioning is discussed in the institutional adjustment portion of this report. Mr. Magee previously reported that his first sexual contact occurred at age twelve or thirteen, and he estimated a total of five sexual partners in his life, three of whom were prostitutes. As noted above, he also has a conviction for attempted rape from 1956. He has never been married or had children.

He reported brief employment in the community as a housepainter, and reported in his 2018 evaluation that he sometimes made money by "gambling and cheating the other gamblers."

'STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION          GAVIN NEWSOM, GOVERNOR

**BOARD OF PAROLE HEARINGS**
EXECUTIVE OFFICE
P.O. Box 4036
Sacramento, CA 95812-4036



Notably, he had only been in the community for several months at the time of his first kidnapping arrest.

## CRIMINAL HISTORY

<u>JUVENILE AND ADULT RECORD / PRIOR PRISON COMMITMENTS:</u> Per the 8/10/1965 Probation Officer's Report (POR), Mr. Magee was convicted on a count of attempted aggravated rape which occurred in Louisiana on 3/8/1956 (when Mr. Magee was sixteen). Per the POR, Mr. Magee reported, "He had been involved with a white woman for some six months, was caught with her by her neighbors, and the woman then accused him of rape." He was sentenced to twelve years' imprisonment on this conviction, and paroled on 10/19/1962 (age 23). The life crimes are his only other adult convictions.

<u>PRIOR PERFORMANCE ON SUPERVISED RELEASE:</u> Mr. Magee has a significant history of poor performance on supervised release. Notably, Mr. Magee was already incarcerated on his 1963 count of kidnapping when he committed the 1970 offense, and was at the scene of the 1970 offense ostensibly to testify on behalf of another inmate. Additionally, he was on parole for an attempted aggravated rape conviction at the time of his 1963 offense.

<u>PRIOR VIOLENCE:</u> Mr. Magee is presently incarcerated on two separate counts of kidnapping, which occurred on 3/23/1963 (age 24) and 8/7/1970 (age 31), respectively.

Regarding the 1963 count, the 8/10/1965 Probation Officer's Report (POR) provided the following account:

"Ben Howard, 1139 East 105th Street was seated in his 1961 Corvair Car, which was parked on the lot of the Tropicana Club, the latter being located at Manchester and San Pedro Streets, on March 23, 1963, at approximately two AM. At this time, he was accosted by both of the defendants, and at this time defendant Ruchell Magee pointed a gun at him and forced him to move to the passenger's side of the car. Defendant Ruchell Magee then got behind the driver's wheel and the codefendant Leroy Stewart got in the back seat, as Magee drove from the location he handed the gun to defendant Leroy Stewart, and the latter placed the gun to the victim's head and demanded all of his money. The victim handed over approximately $10.00. When the car subsequently arrived in the vicinity of the 900 block of North Tajanta Street in Compton, the victim was able to flee from the car and the two defendants drove off in his car. The victim then notified police officers."

Regarding the 1970 count, the following synopsis is taken from the 6/4/1975 Case Summary:

On August 7, 1970, Mr. Magee and William Christmas were transported from San Quentin Prison to the Marin County Courthouse where a criminal jury trial was in progress involving a fellow inmate named McClain. McClain was on trial for possession of a deadly weapon and assault with

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION                    GAVIN NEWSOM, GOVERNOR

**BOARD OF PAROLE HEARINGS**
EXECUTIVE OFFICE
P.O. Box 4036
Sacramento, CA 95812-4036



a deadly weapon upon a correctional officer at San Quentin. The prosecution attorney was Gary Thomas, and the trial judge was the Honorable Harold Haley. McClain was acting as his own attorney and had secured the attendance of Magee and Christmas as, ostensibly, witnesses for the defense.

Prior to the court's convening... a meeting between Magee, Christmas, and McClain took place in a holding cell near Judge Haley's courtroom. When court reconvened, a man named Jonathan Jackson stood up from the seating area with a pistol in hand. McClain received the pistol from Jackson, who then proceeded to the bench and told everybody not to move or he would kill the judge. During this time, Mr. Jackson also produced an automatic carbine, and emptied a suitcase containing adhesive tape, coils of wire, and what appeared to be dynamite. He gave the tape to McClain, who proceeded to tape a shotgun to the judge's neck.

After having his handcuffs removed, Magee went to the rear of the courtroom, and with a pistol in hand, ordered a couple with a baby inside the courtroom, as well as a plain-clothesman. McClain ordered the judge to phone the sheriff. Three additional jurors were taken as hostages, and the jurors were then wired around the waist. The group, consisting of five hostages, three inmates, and Mr. Jackson, all exited the courtroom. Mr. Magee subsequently disarmed at least one officer and held several officers at gunpoint in the corridor. Mr. Magee then pointed a pistol at a deputy and ordered him to drop his shotgun, which Mr. Magee took, along with the deputy's revolver. The group then proceeded to a van and entered it. The van exited the parking lot but then stopped as it approached a roadblock. Several shots were exchanged, and the judge, Mr. Jackson, and two inmates were killed. Mr. Magee was wounded as well, and was observed to reach for the sawed-off shotgun on the floor of the van.

The first trial of the case ended in mistrial because the jury could not arrive on a verdict. The murder charge was subsequently dismissed by the prosecution.

## CLINICAL ASSESSMENT

### REVIEW OF PRIOR PSYCHOLOGICAL EXAMINATIONS/RISK ASSESSMENTS:

Mr. Magee has been eligible for parole consideration since 1982, and as such, he has received numerous prior psychological evaluations. In the interest of relevance to his present violence risk, this section will focus on the results of the most recently submitted evaluations, i.e. those submitted from 2008 on. Dr. Hartung, in a 1/14/2008 evaluation, described Mr. Magee as a "high moderate" risk of violence in the community, but also noted that Mr. Magee did not "present as a candidate for any noteworthy change as a result of psychotherapeutic intervention." A 1/28/2011 evaluation by Dr. Kropf described Mr. Magee as a high risk of violence, noting "little progress in custody" and rule violations as recently as 2009. Finally, Dr. Arkowitz, in a 5/9/2018 evaluation, described Mr. Magee as a high risk of violence, noting a complete absence of programming and a continued justification of prior wrongdoing.

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION                    GAVIN NEWSOM, GOVERNOR

**BOARD OF PAROLE HEARINGS**
EXECUTIVE OFFICE
P.O. Box 4036
Sacramento, CA 95812-4036



## MENTAL STATUS EXAMINATION:

Mr. Magee is a well-groomed African American male who appeared to be his stated age of 82. He appeared to be in fair physical health, with an appropriate build for his height. He ambulated with the aid of a cane. Mr. Magee was clearly oriented to person, place, time, and the purpose of the interview. His speech, during his limited interaction with the evaluator, was clear and understandable, and utilized a vocabulary that suggested intact cognitive functioning. He neither demonstrated nor endorsed any homicidal ideation, suicidal ideation, or psychotic symptoms. No significant physical or neurocognitive abnormalities were noted. His vision and hearing appeared to be within normal limits.

As noted above, Mr. Magee declined to participate in the evaluation, and stated that he planned to pursue a "medical discharge." He also noted that he had already participated in numerous evaluations and did not wish to go through the process again. As a result, the evaluator had very little opportunity to observe Mr. Magee's affective range, as well as other traits which are typically assessed during a violence risk evaluation, such as candidness, sense of responsibility for his actions, self-awareness of treatment needs, and the presence of any impression management.

## SUBSTANCE ABUSE HISTORY AND RELATED DISORDERS:

While remote records suggest that Mr. Magee may have had some substance use issues in the distant past, substance use has not been a focus of treatment for him during this incarceration. Per the 8/10/1965 Probation Officer's Report (POR), Mr. Magee smoked a single marijuana cigarette in his life. When interviewed for his 5/9/2018 evaluation by Dr. Arkowitz, Mr. Magee reported a total of ten alcohol uses in his life and denied use of marijuana at any point. He did acknowledge making pruno during his incarceration in the 1960s for profit, as opposed to personal use. He also denied any use of alcohol or other drugs while in prison. He has no rule violations for substance use during this incarceration, and at present, substance use is not a focus of clinical attention for Mr. Magee. At the time of this report, Mr. Magee does not appear to meet DSM-5 diagnostic criteria for a substance use disorder.

## MAJOR MENTAL DISORDER / PERSONALITY DISORDER:

There is not significant evidence of any psychiatric symptoms or mental health treatment for Mr. Magee, either prior to or during this incarceration. He has not been enrolled in MHSDS at any point. He has recently been seen by mental health providers due to noncompliance with medical intervention, but these meetings have not resulted in psychiatric diagnosis or inclusion in MHSDS. During his brief participation in the evaluation on 4/30/2021, Mr. Magee did not demonstrate any obvious signs of psychiatric symptom or illness. At the time of this report, Mr. Magee does not appear to meet DSM-5 diagnostic criteria for any major mental illness.

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION                    GAVIN NEWSOM, GOVERNOR

**BOARD OF PAROLE HEARINGS**
EXECUTIVE OFFICE
P.O. Box 4036
Sacramento, CA 95812-4036



A personality disorder was also considered for Mr. Magee. Per his previous self-reports, he engaged in some problematic behaviors during his youth, including a single incidence of theft at age twelve and a single fight at age thirteen. However, this behavioral pattern is not sufficiently problematic to suggest the presence of a conduct disorder. He sustained several arrests in late adolescence and adulthood, including the life crime, and sustained numerous rule violations for a variety of negative behaviors during this incarceration, including violence which persisted into his late sixties. His overall behavioral pattern has also been notable for aggression, impulsivity, and irresponsibility. At present, Mr. Magee's personality functioning is best characterized by the DSM-5 diagnosis **Other Specified Personality Disorder, with Antisocial Features.**

INSTITUTIONAL ADJUSTMENT / PROGRAMMING:

Mr. Magee's current incarceration is notable for a lack of engagement in self-help opportunities, increasing medical interventions related to his advancing age, and serious behavioral issues which persisted into his late sixties. Over the course of his incarceration, Mr. Magee has sustained numerous (over eighty) CDCR-115 disciplinary actions. His most recently issued rule violation was for willfully obstructing a peace officer in the performance of duty (5/3/2009), and his most recent violent rule violation was for attempted battery on a peace officer (11/25/2008). Notably, he also has numerous rule violations for threatening public officials and staff, as well as for violence and falsifying records, prior to his most recent rule violations. He also accrued numerous CDCR-128-A custodial counseling chronos over the course of this incarceration, most recently for: refusing to provide urine specimen (5/17/2014). Mr. Magee has no documented STG affiliation.

Mr. Magee is currently enrolled in Katargeo. However, he has virtually no prior programming noted in his c-file.

Mr. Magee is currently unemployed. Mr. Magee's work history during this incarceration includes jobs as a dining room worker, yard worker, porter, and kitchen worker. His most recent work supervisor's report (submitted in 2019) indicated above average work performance.

Mr. Magee has a number of medical issues, including chronic kidney disease, hypertension, paroxysmal A-fibrillation, leg cramping, history of gunshot wound to the back, and numbness and tingling. Mr. Magee ambulated with the aid of a cane when seen on 4/30/2021.

PAROLE PLANS IF GRANTED RELEASE:

Mr. Magee did not participate in the evaluation on 4/30/2021, and therefore did not discuss his parole plans with the evaluator. However, it is the opinion of the evaluator that Mr. Magee will require a relatively high level of medical intervention in the community due to his medical issues and advanced age, and his medical care and related assistance with activities of daily living may be the primary focus of his treatment. He would also benefit from a relatively structured treatment

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION                    GAVIN NEWSOM, GOVERNOR

**BOARD OF PAROLE HEARINGS**
EXECUTIVE OFFICE
P.O. Box 4036
Sacramento, CA 95812-4036



environment, especially considering his very long incarceration and potential difficulties he may experience when leaving the prison infrastructure. What, if any, personal support he has in the community is presently unknown.

## ASSESSMENT OF RISK FOR VIOLENCE: HCR-20-V3: [2]

Please Note: As noted above, Mr. Magee elected not to participate in the evaluation on 4/30/2021. Given the inmate's decision not to participate in the assessment, the evaluator conducted the assessment based upon source document review only which limited relevant findings and opinions accordingly.

## ANALYSIS OF HISTORIC FACTORS:

Based on records alone, Mr. Magee's case is notable for some historic factor elevations for violence. While his age, health conditions, and sustained behavioral stability within the institution suggest some mitigation of the relevance of these elevations to his overall violence risk, his lack of engagement in programming suggests that some of these elevations may continue to present with some relevance to his overall violence risk.

While Mr. Magee previously denied any experience of abuse or neglect as a youth, he did note that his biological father died when he was five, and it is unclear how this experience impacted him. For reasons which are also unclear, he did begin to engage in some rule-breaking behaviors during his youth, including curfew violation, and single incidents of theft and fighting, respectively. However, his participation in violence escalated substantially around the age of sixteen, when he was convicted of attempted aggravated rape and sentenced to prison. This experience also resulted in significant impacts on his ability to maintain gainful employment in the community or to complete his education. This experience may also have introduced him to other negatively-oriented peers, who in turn, may have encouraged pro-violence beliefs. By the time he was released from his first incarceration as a young adult, Mr. Magee had developed a belief system and behavioral pattern which was consistent with a personality disorder, and which encouraged ongoing participation in crime.

His life crimes, kidnappings which were committed in 1963 and 1970, respectively, reflected a willingness to engage in serious violence as a means of attaining a goal, whether financial profit (in the case of the 1963 offense) or freedom for Mr. Magee and his negatively-oriented peers (in the case of the 1970 offense). Additionally, the persistence of his participation in violence both within and outside of the institution, as well as his lack of engagement in programming opportunities when offered, suggests that poor response to treatment and supervision has been a consistent challenge for Mr. Magee, and may have resulted in under-developed levels of self-

---

[2] HCR-20-V³ administration and decision making requires specific knowledge, skills, and abilities established through licensure and training and experience in forensic assessment of violence risk.

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION                    GAVIN NEWSOM, GOVERNOR

**BOARD OF PAROLE HEARINGS**
**EXECUTIVE OFFICE**
P.O. Box 4036
Sacramento, CA 95812-4036



awareness of violence risk treatment needs and/or coping skills. More recently, Mr. Magee has demonstrated relatively stable behavior, and his age and medical conditions have become an ever-increasing focus of treatment.

Because Mr. Magee did not participate in the evaluation, the evaluator was unable to assess Mr. Magee for a number of items on the Psychopathy Checklist-Revised (PCL-R), such as lack of remorse, lack of realistic long term goals, willingness to accept responsibility for his actions, and so forth. As a result, numerous items were omitted, which in turn precluded a total PCL-R score for Mr. Magee. Therefore, no PCL-R score is provided for Mr. Magee.

ANALYSIS OF CLINICAL FACTORS:

Based on records alone, Mr. Magee has a clinical factor elevation for treatment and supervision response, which presents moderate relevance to his overall violence risk. The clinical factor of symptoms of major mental disorder was determined to neither be elevated nor of significance to his overall violence risk, and the clinical factors of self-awareness, violent ideation or intent, and instability were omitted due to lack of information (due to his non-participation in the 4/30/2021 interview). Since his 5/9/2018 evaluation from Dr. Arkowitz, Mr. Magee has accrued no rule violations and he is not noted to have any STG affiliation. While he was noted to be enrolled in programming (Katargeo), his record since Dr. Arkowitz' evaluation was otherwise unremarkable for participation in programming. Additionally, he was noted to have some issues with noncompliance with medical intervention, but the relevance of this to his overall violence risk is unclear.

Mr. Magee did not discuss the life crimes with the evaluator. Based on a review of the records, particularly accounts of the life crimes from primary source documents, it appears that a desire for material gain was a primary motivation for the 1963 kidnapping, and his 1970 crime was motivated by a desire to evade punishment, and was likely influenced by his peer associations within prison. Importantly, Mr. Magee does not appear to have engaged in any antisocial or violent behavior within the institution for over a decade, and his present peer associations are not described as problematic, which in turn suggests some improvement in the aforementioned issues which contributed to his prior crimes. However, his self-awareness of the reasons for his prior behavior and related coping skill development was not discussed with the evaluator, and for this reason, it is unclear if his behavioral improvement is related to improved coping skill and insight, or simply a function of issues related to advancing age and limited physical capacity.

ANALYSIS OF RISK MANAGEMENT FACTORS:

Mr. Magee has two risk management factor elevations, both of which present moderate relevance to his overall violence risk: treatment or supervision response and stress or coping. The risk management factors of professional services and plans, living situation, and personal support were omitted due to lack of current information.

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION                              GAVIN NEWSOM, GOVERNOR

**BOARD OF PAROLE HEARINGS**
EXECUTIVE OFFICE
P.O. Box 4036
Sacramento, CA 95812-4036



Mr. Magee did not discuss his parole plans with the evaluator on 4/30/2021. However, it is clear from a review of his recent records that Mr. Magee's health and age-related physical issues will be a primary focus of treatment in any parole setting, and he may require an assisted living facility or other high-level of support to optimize his community functioning. He has also had an exceptionally long incarceration, and spent only several months of his adult life in the community, meaning that the loss of the prison infrastructure and navigation of new technologies may present particular challenges for him. For this reason, it is recommended that Mr. Magee utilize any available support for such issues in a parole placement, especially if he has limited or absent personal support in the community.

Finally, Mr. Magee has a substantial history of poor responsiveness to treatment and intervention, which has persisted until very recently, which in turn may belie apathy or antipathy regarding the utility of treatment. Additionally, there is some concern that he may not yet have developed a full repertoire of coping skills to utilize in a parole setting, which again suggests that Mr. Magee may benefit from a slow return to community living in order to minimize his exposure to stressors.

## OTHER RISK CONSIDERATIONS

### CONSIDERATIONS OUTSIDE OF HCR-20-V3:

As noted above, Mr. Magee has a number of medical issues, including chronic kidney disease, hypertension, paroxysmal A-fibrillation, leg cramping, history of gunshot wound to the back, and numbness and tingling. Mr. Magee ambulated with the aid of a cane when seen on 4/30/2021. These issues, coupled with presumable age-related declines in mobility and strength, suggest that his physical capacity is diminished when compared to that at the time of the life crime. As a result, he may be less likely to inflict damage on a resisting adult without the aid of a weapon, or move swiftly when involved in a crime. Additionally, his sex drive may be lower than it was at the time of the sex offense conviction, which in turn may disincentivize participation in similar activity in the future.

### STATIC-99R:

The Static-99R utilizes only static (unchangeable) factors that have been seen in the literature to correlate with sexual reconviction in adult males. The Static-99R does not address all relevant risk factors for sex offenders and the resulting raw score and risk category generally does not consider contextual and dynamic risks that may increase or decrease risk. While Mr. Magee's record is notable for a prior sex offense conviction, he was sixteen years old at the time of the sex offense, meaning that he was younger than the normative sample and intended population for administration of the Static-99R. For this reason, no Static-99R score is provided for Mr. Magee.

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION                                    GAVIN NEWSOM, GOVERNOR

**BOARD OF PAROLE HEARINGS**
EXECUTIVE OFFICE
P.O. Box 4036
Sacramento, CA 95812-4036



ELDERLY PAROLEE:

Mr. Magee reached his Elderly Parole Eligibility Date (EPED) or will reach it within three years of his scheduled parole consideration hearing. Consequently, when assessing his violence risk the evaluator took into consideration age-related statistical decreases in crime, associated cognitive, psychosocial, and physiological changes, impacts of long-term incarceration, and relevant risk management needs. Mr. Magee, for instance, has clearly demonstrated an improvement in his behavior since 2009, with no new rule violations (despite a very high frequency of rule-breaking behavior prior to this point). Additionally, his physical condition may limit his capacity to engage in hands-on violence or crimes involving higher levels of agility, strength, mobility, or speed.

**RISK OF FUTURE VIOLENCE: CASE FORMULATION AND OPINIONS**

Mr. Magee presented on 4/30/2021 as an 82-year-old male in poor physical health. He also did not participate in the evaluation on 4/30/2021, meaning that the evaluator was almost entirely reliant on his c-file to arrive at an opinion on his violence risk. Dr. Arkowitz, in a 5/9/2018 evaluation, described Mr. Magee as a high risk of violence, noting a complete absence of programming and a continued justification of prior wrongdoing. Since Dr. Arkowitz' evaluation, Mr. Magee has engaged in very limited programming (he was enrolled in Katargeo at the time of the 4/30/2021 evaluation, but had no prior programming) and maintained stable behavior (he has no serious rule violations since 2009). Additionally, his medical issues appear to account for an ever-increasing amount of treatment.

Based upon an analysis of the presence and relevance of empirically supported risk factors, case formulation of risk, and consideration of the inmate's anticipated risk management needs if granted parole supervision (i.e., intervention, monitoring), Mr. Magee represents a moderate risk for violence. He presents with elevated risk relative to long-term parolees and non-elevated or below average to average risk relative to shorter-term parolees released without discretion. Moderate-risk long-term parolees are expected to commit violence more frequently than Low-risk long-term parolees but less frequently than shorter-term parolees. A high risk rating was also considered for Mr. Magee, particularly regarding Dr. Arkowitz' 2018 notes regarding justification of prior negative behavior, and no evidence of significant improvement in behavior since that time. However, his sustained behavioral stability, coupled with his advancing age and medical issues, suggests that some moderation of his violence risk is warranted. Please note, if Mr. Magee has continued to justify his actions, or described willingness to engage in similar actions in the future if presented with similar circumstances, a higher risk rating should be considered.

Generally speaking, the current recidivism rates for long term offenders are lower than those of other prisoners released from shorter sentences. The board defines overall risk ratings relative to other life prisoners.

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION                                    GAVIN NEWSOM, GOVERNOR

**BOARD OF PAROLE HEARINGS**
**EXECUTIVE OFFICE**
P.O. Box 4036
Sacramento, CA 95812-4036



For reasons which are not entirely clear, Mr. Magee began to engage in serious violence in late adolescence, which resulted in near-continuous incarceration to the present day. His life crimes, separate kidnappings which occurred on 1963 and 1970, respectively, were apparently facilitated by a willingness to use violence in order to attain a desired goal. As his custody score indicates, he remained involved in serious behavioral issues for much of his incarceration, though his behavior has substantially improved since 2009. While the reasons for this improvement are not entirely clear, his age and physical condition may be contributing factors. Regardless, he would also likely benefit from increased participation in programming, with a goal of increasing his awareness of his motivations for participating in violence, as well as developing commensurate coping skills.

Benjamin Levin, Psy.D., CA License # PSY 24911
Forensic Psychologist
Board of Parole Hearings / Forensic Assessment Division
California Department of Corrections and Rehabilitation

Reviewed By:

Stacy Thacker, Ph.D., CA License # PSY-16323
Senior Psychologist, Supervisor
Board of Parole Hearings / Forensic Assessment Division
California Department of Corrections and Rehabilitation

**DATE APPROVED:** 5/13/2021 [3]

---

[3] CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use, or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act and the Health Insurance Portability and Accountability Act (HIPAA). If you are not the intended recipient, please contact the sender and destroy all copies of this communication.

Bernard J. Suares
1890  23rd Avenue
San Francisco, CA
94122

FBI, Director____
U.S. Dept. of Justice
Washington, DC
    and,

U.S. Attorney General
c/o  Civil Rights Investigation
Dision
Main Justice Bldg.
10th & Constitution Avenue, N.W. #4400
Washington,  DC  20530

September 23 , 2002

Subj:  CITIZENS COMPLAINT

    I write you in behalf of the people's of the United
States and, in behalf of the Jurors who presided in the
criminal case hereof entitled People vs- Ruchell Magee,
case number 83668, Superior Court of San Francisco County,
State of California, and in behalf of this jury bringing the
complaint, and in behalf of one Ruchell Magee.

    I was elected jury foreman in the criminal trial
of Ruchell Magee.

    Jury deliberations commenced on March 26, 1973.

    During the deliberations, the trial judge Morton Colvin
was gave the jurors verdicts showing:

    A)   All twelve jurors found defendant Ruchell Magee
not guilty of violating P.C. 209  (kidnapping for the purposes
of extortion);

    B)   As the record reflect, the jury were hung eleven
to one in favor of conviction on the lesser included offense
(simple kidnap)  Penal Code 207.

    On April 3, 1973, judge Colvin declared a mistrial
without disclosing the acquittal in his possession.   To this
jury's knowledge, the acquittal remains in the clerk of
court minutes, but not giving any judicial attention based
on what seems to be some deception order by KANGAROO-COURT.

    On April 27, 1973, a declaration was filed by this
jury, and supported by other jurors statements confirming



Exhibit- C

Sept./   /02                                          2

the acquittal Concealed by the court.    We was again
ignored.   Further, judge Colvin ordered that Mr. Magee be
prosecuted a second time for the same kidnap count (P.C. 209)
IN THE Superior Court of Santa Calra County.

Some where between judge Colvin's chamber's and the
Superior Court of Santa Clara county a false affidavit was
manufactured by the prosecution, which affidavit was used to
undermind the court to believe one jury William Irwin
impeached the jurors declaration filed April 27, 1973 .

Investigation is necessary in the emergence sense,
because the prosecution lied to the courts and used known
false information that led to a fraudulently decision
now used by appellate judges to set up gag-rules on the
erronously belief that the false affidavit is true.   Evidence
that impeaches the prosecution's false affidavit is the
jury acquittal gave judge Colvin before he declared mistrial
April 3, 1973.

Your office have the resources to: 1)  view the jury
acquittal in the records;  2) Assign special prosecution with
judge to honor the acquittal, and 3)  Prosecute those who
are responsible for concealing the acquittal and subjecting
an INNOCENT MAN (Ruchell Magee) to false imprisonment.  You
will find that Mr. Magee have been kidnapped by officers of
the court who have conspired to subject his person to wrongful
death in prison, in attempts to cover up the criminal acts
did against Mr. Magee.

Mr. Magee is the longest held prisoner in the
Calofrnia Prison system  ( more than 40 years).  Not for
a crime, but based on kangaroo-court corruption that he
have been forty some years appealing to the court's
showing false evidence convictions on known falsehood.
His evidence of innocence remains under gag-rules where
judges failed/refused to remove for fear of getting in
bad standing with those who have taking over the courts
and commenced practicing slavery under color of justice.

The media  have done a job on keeping the public
handcuffed and blinded .

You will find vicious fraud upon reviewing this
arbitrary decision styled Ruchell Magee Vs. Superior Court
of Santa Clara County (1973) 34 Cal. App. 3rd 201.  Compare
with the jury acquittal gave the trial court before it
declared mistrial, which evidence impeaches the decision
above mentioned.

Sept. /  /02                                                3

The public is by law and right, is entitled to know
the truth.

The truth is kept hidden by a mob using the courts-system
to exploit the public, apparently because the kangaroo-court
mob see all citizens as their slaves to be lied to, and told
what to think and do.  This mob is out of touch with reality,
and the United States Constitution.   As much as they use the
words law and justice, it don't seem that they know what justice
mean.

We, urge your office to use its authority to assign
special prosecution with judge to honor the acquittal in
the interest of justice.

I will testify in a court of law, and produce more
evidence, if called.

I certify uder penalty of perjury the foregoing is true
and correct to the best of my knowledge and belief.

Respectfully  Submitted

BERNARD J. SUARES

HC-001

Name: Ruchell Cinque Magee

Address: CMF

P.O. Box 2000

Vacaville, CA

95696

**SUPREME COURT**
**FILED**

JUL 21 2020

Jorge Navarrete Clerk

_____
Deputy

CDC or ID Number: A92051

**CONFORMED COPY**

SUPEME COURT OF CALIFORNIA

_____

_____

_____

_____

*(Court)*

---

| Ruchell Magee |
|---|
| Petitioner |
| vs. |
| Robert Fox, Warden, |
| Respondent |

PETITION FOR WRIT OF HABEAS CORPUS

No. **S263467**

*(To be supplied by the Clerk of the Court)*

---

## INSTRUCTIONS—READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

---

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the superior court, you only need to file the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original of the petition and one set of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and 10 copies of the petition and, if separately bound, an original and 2 copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

---

Approved by the Judicial Council of California for use under rule 8.380 of the California Rules of Court (as amended effective January 1, 2018). Subsequent amendments to rule 8.380 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

**RECEIVED**

Page 1 of 6

Form Approved for Optional Use
Judicial Council of California
HC-001 [Rev. January 1, 2019]

**JUL 21 2020**

PETITION FOR WRIT OF HABEAS CORPUS

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rule 8.380
*www.courts.ca.gov*

**CLERK SUPREME COURT**



Exhibit A

HC-001

This petition concerns:

- [x] A conviction
- [ ] Parole
- [x] A sentence
- [ ] Credits
- [ ] Jail or prison conditions
- [ ] Prison discipline
- [x] Other (specify): DISCOVERY OF NEW EVIDENCE, IRREFUTTABLE

1. Your name: Ruchell Magee

2. Where are you incarcerated? CMF, Vacaville, CA

3. Why are you in custody? [x] Criminal conviction    [ ] Civil commitment

*Answer items a through i to the best of your ability.*

a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

Kidnap to Rob

b. Penal or other code sections: P.C. 209 & 211

c. Name and location of sentencing or committing court: Sperior Court Of Los Angeles County, Los Angeles, CA

d. Case number: 272227

e. Date convicted or committed: July 28, 1965

f. Date sentenced: August 23, 1965

g. Length of sentence: Life

h. When do you expect to be released? Upon a fair hearing on the merits of this case

i. Were you represented by counsel in the trial court? [x] Yes [x] No  *If yes, state the attorney's name and address:*
Court appointed something acting stuntman for the Prosecution as documented evidence shows herein

4. What was the LAST plea you entered? *(Check one):*
Officers of Court entered Insanity Plea
- [ ] Not guilty  [ ] Guilty  [ ] Nolo contendere  [x] Other: _____

5. If you pleaded not guilty, what kind of trial did you have?
During jury deliberation, Withdrawn Their Plea of Not Guilty by reson of Insanity.
- [x] Jury  [ ] Judge without a jury  [ ] Submitted on transcript  [ ] Awaiting trial

HC-001

6. GROUNDS FOR RELIEF

Ground 1: State briefly the ground on which you base your claim for relief. For example, "The trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page 4. For additional grounds, make copies of page 4 and number the additional grounds in order.)*

> The Superior Court and District Attorney failed
> To deny documented and New Discovery Facts and Evidence
> Of Innocence and imprisonment on False Insanity Plea

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts on which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel, you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is, *who* did exactly *what* to violate your rights at what time *(when)* or place *(where).*

> On April 5, 2020, or about, the petitioner submitted written litigation to the Superior Court Of Los Angeles County, entitled " INFORMAL NOTICE AND MOTION FOR DISCOVERY AND AFFIDAVIT IN SUPPORT ( APA 5 U.S.C.§§ 701 & 702 )."
> On April 27, 2020, or about, the petitioner submitted written NOTICE AND MOTION FOR ENTRY OF DEFAULT AFFIDAVIT IN SUPPORT (CCP Sec. 471.5(a)."
> On May 21, 2020, the petitioner submitted written Motion For Judicial Notice all in the same Superior Court..
> The Court and the District Attorney failed to respond, because to do so they would have had to deny or admit the documented facts and evidence showing false conviction,

( Page attached ).

b. Supporting documents:

Attach declarations, relevant records, transcripts, or other documents supporting your claim. (See *People v. Duvall* (1995) 9 Cal. 4th 464, 474.)

> Notice and Motion For Entry Of Default Affidavit In Support, Marked Exhibit-1, attached.
> Informal Notice and Motion For discovery and Affidavit In Support, Marked Exhibit-2, attached.
> MOTION FOR JUDICIAL NOTICE, Marked Exhibit-3, attached.

c. Supporting cases, rules, or other authority *(optional):*

(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)

> Mcquiggin Vs. Perkins, No.12-126 (May 2013) 133 S.Ct. 1924; 185 L.Ed.2d 1019 citing Schlup Vs-Delo, 513 U.S. 298, 11 5 S.Ct. 851, 130 L.Ed.2d 808 Actual Innocence showing by Newly Discovery Evidence mandate habeas relief..
> Crum Vs. Superior Court ( 2004) 121 Cal. App. 4th 646, 650 ("CCP § 2017-2019 ("Any party may obtain discovery...")

7. Ground 2 or Ground ___2___ *(if applicable):*                                    HC-001

The Superior Court has no discretion to exercise where the
petitioner shows prima facie issues by Informal Notice and
motion for Discovery of evidence and ASFIDABIT IN SUPPORT
regarding denial of effective assistance of counsel.

a. Supporting facts: The superior failed to respond to the facture issue

showing denial of effective assistance of counsel.
         By not responding, the court and district attorney
has demonstrated racism in the court system causing to follow
in the footstept of the trial judge-lawyers and other officers
of the court where such influence divert from the material facts
and law applicable to the petioner's case which prevents justice
the petitioner requested upon its merits.   The superior court
shows no responsible action the society which it supposed to
be there to serve.
         The superior court by sitting down the proven facts and
evidence of denial of counsel never addressed the merits of the
constitutional claims.   Application for default was filed because
the court abd District Attorney failed to respond upon examining
the claims. There is no authority what so ever for the suppressing
evidence of innocence and imprisonment on false evidence and
false misrepresentation recklessly carried out in the way of
systematically racism which millions of Protestors are today
denouncing in demand for Police reform .

b. Supporting documents:        Exhibits 1, 2, and 3 Supra.

         Showing the superior court failed to deny the jurors
verdicts on the insanity plea being worthy of confidence.

c. Supporting cases, rules, or other authority: Strickland Vs. Washington ( 1984 ) 466 U.S.
688 at 687.   petitioner shown that court appointed counsel's
performance with its false insanity plea fell below an Objective
standard of reasonabless.
         The court failed to respond to the fact that counsel
acts or ommissions were outside the range of professionally
competent assistance. Id.at 690;Wiggins Vs.Smith (2003) 539 U.S.
510, 521. Exhibits 1,2 and 3 shows that petitioner was prejudiced
counsel's deficient performance. Strickland, 466 U.S.at 693-94.

GROUND 3:

SUPERIOR COURT DO NOT DENY THE CLAIM OF ILLEGAL RESTRICTIONS ON THE PETITIONER ALLOWED TO PREJUDICE THE JURY.

Fact In Support:

Exhibits 1,2 and 3, present  the Claim of the petitioner being MUZZLED and chained in presence of the jurors for Constitutionally Objecting to the false insanity plea poison entering the jury box.

The court allowed the false plea of not guilty by reason of Insanity to be argued during the prosecution attorney's closing argument, including its opening argument and in a prejudicial way waited until the jurors commenced deliberations on the false plea poison to such time to order the plea withdrawn.    Clearly, evidence documented
shows the jurors announced guilty verdicts on a plea of Not guilty by reason of insanity argued by the prosecution attorney.

Clearly, the superior Court cannot show any verified evidence that once the plea was withdrawn the fact was futher brought out no standing plea is in existent for the jurors verdicts Of guilt.

The Superior Court can show no verified evidence that the trial Court did not act without jurisdiction Ordering the petitioner put in illegal restraints in presence of the jurors for Constitutionally exercising his right to object to what a crazy acting lawyer put in the jurors box to prejudice the jury in a KANGAROO COURT way to convict an innocent person.

Clearly, had petitioner had effective counsel he would not have been dragged before jurors and in restraints and convicted

4/a

On the poison Insanity plea.   The new evidence reveal the shackles and false
insanity plea had "substantial and injurous effect" on the verdict which
were not harmless error. Petitioner objected to the insanity plea with
intents to prohibit the Prosecution from exploiting a defendant's silence.

Supporting cases, rules, or other authority;

          Brecht Vs-Abrahamson (1993) 507 U.S. 619, 623, 637, also
Parker vs-Gladden (1966) 385 U.S. 363, 366, 87 S.Ct.468, 17 L.Ed.2d 420
(" A defendant is entitled t8 be tried by 12, not 9 Or even 10,
impartial and unprejudiced jurors.  Rhoden vs-Rowland (9th Cir.1999)
(" Shacling during trial carries a high risk Of prejudice...")
See Matire Vs- Washington (11th Cir.1987) 811 F. 2d 1430, 1435-36; also
Hohn Vs- United States ¥ 1998¥ 524 U.S. 236, 141 L. Ed. 2d. 242; 188 S.
Ct. 1969.

1   TO respond to the facts and evidence presented, the respondent

2   Court and District Attorney would perjury themselves On record

3   denying (a) prejudice arised from the false Plea Of Insanity

4   Once its poison entered the jury box.

5   Once the court withdrawn its plea based it being false

6   misrepresentation on part Of its appointed counsel, IT BECOME

7   EVIDENCED INJURIOUS TO THE PETITIONER.

8   Respondent's Court and the District Attorney know

9   that the jurors being prejudiced by said false plea may be

10  REBUTTED ONLY BY Am Affirmative evidentiary showing that prejudice

11  does not exist.  DoctOred transcripts may not obstruct the

12  reviewing Court's examination of the entire trial court

13  records tO determine whether there is a reasonable prObability

14  of actual harm to the complaining party resulting from the

15  false plea .  ( See Pritt Vs-North Carolina (1971) 404 U.S.226,

16  227; also Brady Vs- Maryland (1963) 373 U.S. 83, 87).)

17  In the case at bar, the doctOred transcript's used

18  by previous Courts denying habeas corpus without disclosure

19  of the complete and correct trial records CHANGED the details

20  after the fact in ways that defy logic .  By failing to respond

21  to the petitioner's INFORMA NOTICE AND MOTION FOR DISCOVERY

22  AND AFFIDAVIT AND INTERROGATORIES, the respondent's Court and

23  District AttOrney Defaulted ( Exhibit-1, Supra.)   In secrecy,

24  the previous courts denials of the petitioner's habeas corpus

25  altered the disposition of the merits Of the petitions and

26  prejudiced the petitioner by allowing the false transcripts

27  to take control over the trial Court records ( evidence ) which

28

disclose new evidence that IMPEACHES all previous Courts

denials or decisions made without reviewing the correct trial

Court records that support the petitioner's Constitutional

Claims involving a miscarriage of justice in need of correcting.

Suppression of Evidence shows previous Courts

denied Habeas Petitions upon misapprehending the Doctored

Transcripts - drawing factual conclusions unsupported by

substantial evidence. ( Habeas denied  September 12, 2014,

No.272227, and October 22, 2014, Superior Court of Los Angeles

County upholding the conviction, than, prior to, and after

WITHOUT DISCLOSING THE TRIAL COURT'S COMPLETE AND CORRECT

RECORDS FOR REVIEW. )

Clear and convincing evidence of actual INNOCENCE

and in prison of false conviction shows by the Court and

District Attorney's suppressing the trial Court Records and

having nothing to rebut the pending Discovery litigation...

Respondent Court and District Attorney do not

deny affidavit facts supported by the trial Court's correct

records, showing:

1.    Respondent's Court had ample time before trial
      to withdraw its false insanity plea.
      July 7, 1965, the Court denied petitioner's
      Moton For Dismissal Of Counsel based the plea
      by counsel he had never met or talk to caused
      CONFLICT between Counsel and Client.

2.    The Court failed to allow the Mandatory Marsden-
      Hearing based it's erroneous speech-making about
      counsel jacke being a good lawyer ...

3.    In so failing to dismiss counsel, the Court
      ignored  the facts and evidence of Court appointed
      counsel performance was dificient - its representation

fell below an objective stand 0f reasonableness under

prevaling professi0nal Norms.

Respondent's court is faced with newly evidence that

the correct and full trial court records support :

July 28, 1965, the trial judge 0rdered its plea of

not guilty by reason of insanity withdrawn .

The New evidence impeaches the doctored transcript and

proves all previous courts denial of the petitioner's

habeas petiti0ns more than 5-decades was based on piece

meal reviews from use of the doctored transcripts.--------

Doctored transcript referred as report Transcript of the

1965 prosecution (RT.p.4 through 17)making it appear date

of withdrawal of the insanity plea-    With that date

confused, the agencies put on deception show with words

of falsehood indicating the jurors did not hear the false

plea of not not guilty by reason of insanity.

    1.  The jurors was deliberating at time the
        Court ordered it insanity plea withdrawn, on
        m0tion by the petitioner's so called counsel
        Jacke.

    2.  Moments after the plea was said withdrawn, the
        Court allowed the jurors to announce guilty
        verdicts to the charge 0f kidnap t0 rob.

    3.  The jurors was informed that no sanity hearing

would be necessary, because the plea of in$anity had been

withdrawn... Life sentence issued August 23, 1965.

        Respondent's court has nothing to rebut petitioner's

Constitutional Rights claim.

1    There was surely a connection between the arresting Officers
2    and lawyer clay H. Jacke.    Jacke was a deputy sheriff before
3    coming a court appointed counsel, deputy at the Firestone
4    sheriff Station in Los Angeles County .    Its first day in
5    court May 18, 1965, shown acts or omissions outside the range
6    Of professionally competent assistance,    Prejudice is found
7    since day of the false insanity plea to this very day of  the
8    court suppressing the trial court records and putting "n a
9    facade link between the use of doctored transcripts and
10   withholding the correct trial Court records, in violations "f
11   First; Fifth and Fourteenth Amendments "f the United States
12   Constitution.

13    Petitioner remains in prison after more than 56 years
14   filing legal documents in the Courts that turn blind eye to
15   his legal docments filing, and put on a facade about the
16   petitioner filed too many legal documents, or petitioner
17   filed too late Or petitioner was convicted in the Marin County
18   shootout where four persons _ One including a judge was killed.
19   Many orders denying habeas corpus review on the Los Angeles
20   County conviction challenged recited the Marin County indictment
21   INCIDENT , BUT SAY NOT ONE WORD OF THE PETITIONER being
22   acquitted on the Marin County Indictment charges of 1970.

23    The acquittal remains concealed by state agencies on
24   the P.C. 209 ( Kidnap ) charge of 1970, which is an ongoing
25   pending issue in the federal courts.

26    There would be no convictions in this matter, and no
27   doctored transcripts would exist in the first place, or the

28

H/f

1   false conviction could be corrected by a reasonable jurist

2   taking a responsible review of the new evidence pending in

3   the superior court where blind eye cannot see what's

4   presented by the petitioner because he is criminalioed

5   by those who hate the petitioner's skin color.  In relative,

6   racism  do not influence my values.

7       Judging my person white supremacy's judgment, proves

8   backward thinking - something that millions of Protestors

9   internationally are today speaking out against and demanding

10  Police reform.

11      If not for racism, and the Officers of the Court's

12  errOrs, (unprofessional errors), the result of the proceeding

13  would have been different,

14      The trial Court made no efforts to determine if

15  it's appointed counsel's insanity plea was entered with legal

16  foundation upon dismissing the petitioner's motion for dismissal

17  of Counsel, as showing by the records July 7, 1965, or about.

18      Should be noted, that the Court made no effort to

19  find if the insanity plea based foundation May 18, 1965 upon

20  entered by counsel, over the petitioner's expressed objection,

21  and telling the Court that was not his plea - that his only

22  plea was a previous judgment of conviction or acquittal (RT.pp.

23  2-3, May 18, 1965).

24      As evidence shows, before the petitioner could

25  finish his Once Jeopardy Plea pursuant to P.C. 1017, the

26  Court ordered him removed from the court room. ( RT.p 3).

27

28

It should be noted, that the petitioner's jeopardy plea with effective assistance could have been argued that the Double Jeopardy Clause of the Fifth Amendment(guaranteed by the Fourteenth Amendment, U.S. Const.) states that no person shall be subject for the same offense to be twice put in jeopardy of life or limb.

As shown by the evidence, the petitioner testified during the Original trial May 27, 1963 that he was innocent. Nexus between the 1963 prosecution before the same court judge (Herbert V.Walker.   May 27, 1963, after the petitioner testified, and produced eye-witnesses evidence before the all white jurors of mostly old womens selected by the prosecution and court appointed counsel, the Officer of the court entered their personal false guilty plea to the charge of kidnap to rob, over the petitioner's expressed objection.

On May 28, 1963, during the prosecution's closing argument's the jurors was told that Mr. Brown's testimony Could not be used, to convict defendants Stewart and Magee on the guilty plea.

Life sentence issued upon the jurors convicting the petitioner .  Sentence June 25, 1963 ( Case 272227 ).

December 18, 1964, the Appeal Court reversed the 1963 conviction based on its appointed Counsel's argument of improper consolidation of Magee trial with Co-defendant Stewart's case.

Nothing was mention of the false guilty plea used to undermine the jurors to convict petitioner=because

4/h

1   the transcript's issued on appeal did not show the false

2   guilty plea by officer's of the court.    Lucky, the

3   petitioner's family member obtained the Clerk's minutes

4   showing the false guilty plea entered May 27, 1963.

5       The prosecution's closing argument on the guilty

6   plea 1963 was also missing,

7       Had the appeal Court reversed on the false guilty

8   plea, the evidence would have proven the prosecution's

9   had no sufficient evidence to support the conviction,,,

10       Where the case proves to political for the

11   Superior Court to uphold the law against the gross

12   miscarriage of justice complained of, the Superior

13   Court and District Attorney remain silent and sit down

14   on the evidence in default.

15           CIRCUMSTANCES OF CONVICTION

16       While suffering from the 1960's illegal conviction

17   in prison, On  Augst 7, 1970, the petitioner was taking to

18   the Marin County Superior Court from a San Quentin Prison

19   dungeon cell where he joined the rebellion with three

20   Black revolutionaries .

21       Four persons was killed by the San Quentin guards

22   firing guns- One person included a Superior Court judge.

23       Three jurors - the petitioner and a District

24   Attorney was injuried.

25       Petitioner was charged with murder; kidnap and

26   conspiracy along with Co-defendant Davis.  Both Davis and

27   the petitioner was acquitted of all charges.  However, the

28

acquittal of the 1970 indictment charge of kidnap for
purpose of extortion remain concealed not to be honored
showing:

> " During deliberations ( which commenced March 26,
> 1973 - April 3, 1973 ) all twelve jurors agreed
> that the defendant was not guilty of violating
> Penal Code 209 ( Kidnapping for purpose of
> extortion ) ... "

The acquittal issue is before the federal Courts.

No Court has produced any evidence "f the petitioner's
filing more than 50 years in the courts ( state & Federal )
CONPLAINING OF A PATTERN OF GROSS MISCARRIAGE OF JUSTICE
Abused filing.

According to law, limitation do not apply in cases of
government agencies suppressing evidence. Brady Rule; also
Miller -El Vs- Dretke ( 2005) 545 U.S. 231, 241 -242.

In the present case, the Courts acted without
jurisdiction to convict the petitioner on false evidence
and misrepresentation, and false pretend conferring
jurisdiction .   No ruling made by Courts denying habeas
relief is valid.

> Bowen Vs-Johnson (1939) 306 U.S. 19-26; 59 S.Ct.
> 442-446; also Smith Vs-Bennett, 365 U.S.708-713
> (" Unceasing contest between personal liberty and
> government oppression".)

JURISDICTION QUESTION


CAN A COURT CONFER JURISDICTION BY USE  OF
DOCTORED TRANSCRIPT WHERE JURISDICTION DO
NOT EXIST AND SYSTEMATICALLY/VOID RULING
VALID, WITHOUT VIOLATING DUE PROCESS CLAUSE
OF THE FOURTEENTH AMENDMENT, U.S. CONSTITUTION ?


Where the court is discovered to have basis for

rending a bias judgment, its actual motivation are hidden
from review, we must presume that the Process was impaired.

( See Tumey Vs- Ohio (1927)

273 U.S. 535, 77 L.Ed. 749, 47 S.Ct.

437.

4 /k

RELIFF

Petitioner is without remedy saved by writ Of Habeas Corpus.

WHEREFORE, petitioner request that this court:

1)  Order a Show Cause Hearing at which time any question concerning the Informal NOtice and Motion For Discovery can be addressed, allowing this Respectable Court  further evidence it may need to grant habeas relief;

2)  Order release of all records in case NO.272227.

3)  Declare the Rights of the Parties;

4)  Direct the respondent's in accordance with the California  Rule of Court, in lieu of sanctions for failure to do so.

5)  Grant the petitioner any further relief this Court deem proper and warrant in the interest of justice.


I certify under penalty of perjury the foregoing is true and correct.

Executed: July 14, 2020

*Ruchell Magee*

RUCHELL Magee

HC-001

8. Did you appeal from the conviction, sentence, or commitment? [X] Yes [ ] No    If yes, give the following information:

a. Name of court ("Court of Appeal" or "Appellate Division of Superior Court"):
   Cal. 2nd App. Dist.

b. Result: _____Involuntarily dismissed_____     c. Date of decision: Dec. 1965

d. Case number or citation of opinion, if known: _____People vs. Magee_____

e. Issues raised: (1) _____Doctored transcript's / suppression of trial_____

   (2) _____Court records_____

   (3) _____

f. Were you represented by counsel on appeal? [ ] Yes [X] No    If yes, state the attorney's name and address, if known:
   _____

9. Did you seek review in the California Supreme Court? [ ] Yes [X] No    If yes, give the following information:

a. Result: _____     b. Date of decision: _____

c. Case number or citation of opinion, if known: _____

d. Issues raised: (1) _____

   (2) _____

   (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal (see *In re Dixon* (1953) 41 Cal.2d 756, 759):
   _____Prosecution suppressed trial court records and_____
   _____introduced doctored transcripts on appeal to obstruct review_____
   _____of evidence of the frameup complained of ..._____

11. Administrative review:

a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Dexter* (1979) 25 Cal.3d 921, 925.) Explain what administrative review you sought or explain why you did not seek such review:
   _____N/A_____
   _____
   _____
   _____
   _____
   _____
   _____
   _____

b. Did you seek the highest level of administrative review available? [ ] Yes [ ] No
   *Attach documents that show you have exhausted your administrative remedies.* (See *People v. Duvall* (1995) 9 Cal.4th 464, 474.)

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court, including this court? (See *In re Clark* (1993) 5 Cal.4th 750, 767–769 and *In re Miller* (1941) 17 Cal.2d 734, 735.)
   [X] Yes    If yes, continue with number 13.    [ ] No    If no, skip to number 15.

(State and federal Court)                                    HC-001

13  a.  (1)  Name of court: _More than 5-decades of filing habeas Petitions_

    (2)  Nature of proceeding (for example, "habeas corpus petition"): _Habeas Corpus_

    (3)  Issues raised: (a) _same issues herein_

                       (b) _____

    (4)  Result (attach order or explain why unavailable): _Denied_

    (5)  Date of decision: _1967 through July 2020 pending case_

    b.  (1)  Name of court: _____

    (2)  Nature of proceeding: _____

    (3)  Issues raised: (a) _____

                       (b) _____

    (4)  Result (attach order or explain why unavailable): _____

    (5)  Date of decision: _____

    c.  For additional prior petitions, applications, or motions, provide the same information on a separate page.

14.  If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

    _N/A_

15.  Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Robbins (1998) 18 Cal.4th 770, 780.)  _State agencies withholding the important portions of the trial records- causing excessive delay trying to loophole with doctored transcript's and piece meal reviews._

16.  Are you presently represented by counsel? ☐ Yes  ☒ No    If yes, state the attorney's name and address, if known:

17.  Do you have any petition, appeal, or other matter pending in any court? ☒ Yes  ☐ No    If yes, explain:

    _INFORMAL NOTICE AND MOTION FOR DISCOVERY AND AFFIDAVIT_
    _IN Superior Court Of L.A. County, CA._

18.  If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

    _The lower Court's suppresses the trial record evidence of_
    _INNOCENCE, and imprisonment on false conviction, irrefuttable evidence._

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: _July 14, 2020_

▶ _Ruchell Magee_
                                                    (SIGNATURE OF PETITIONER)

SUPREME  COURT OF CALIFORNIA

In re
Mitchell XXXXX Mages

   Vs -

Robert Fox, Warden,

NO.

PROOF OF SERVICE BY mail -

I hereby certify that on July 14,  2020  served a copy of
WRIT OF HABEAS CORPUS
the attached

by placing a Cory of the foregoing
enclosed addressed to the person(s) hereinafter listed by depositing said
envelope in the United States Mail at Vacaville, California

      CALIFORNIA ATTORNEY GENERAL
       455 Golden Gate Avenue
       San Francisco, CA 94102

I certify under penalty of perjury the foregoing is true and correct.

Dated: July 14,  2020

MITCHELL        MAGES

Ruchell Cinque Magee
CMF, A92051 # T-115
P O Box 2000

Vacaville, CA 95696

IN THE SUPERIOR COURT OF THE STATE OF

CALIFORNIA- COUNTY OF LOS ANGELES

People Of The State Of California,    )    NO. 202227
                          Plaintiff,    )
                                        )    NOTICE AND MOTION FOR ENTRY
              Vs-                       )    OF DEFAULT AFFIDAVIT IN
Ruchell Magee,                          )
                          Defendant    )    SUPPORT ( CCP Sec.471.5(a).)

===========================================

NOTICE TO ALL PARTIES OF INTEREST:

    Now into Court, Ruchell Magee, by special appearance and not
appearing generally without waiving any rights, remedies or defense and
without prejudice - move this respectable court to enter into the record
the  respondent's default, for failure to appear and answer the motion
for Discovery in the above captioned action as fully appears from the
record.

    Affidavit In Support of This Motion attached.

I  certify under penalty of perjury the foregoing is true and correct.

Dated: April 27, 2020                      Submitted By:

RECEIVED  *Ruchell Magee*

JUL 21 2020   Ruchell  Magee, petitioner



CLERK SUPREME COURT

AFFIDAVIT OF FACTS

I, Ruchell Magee, declare true the facts as   follows:

1/ I am the petitioner in the above-entitled cause of action.

2 /      There is no veridied evidence in the record that the petitioner

has committed the alleged act of kidnap to rob in violation of Penal

Code Section 209 and 211, and petitioner denies any verified evidence

exists  to the contrary;

3 /      There is no verified evidence in the record that the jurors

was not prejudiced by the plea of not guilty by reason of Insanity

upon hearing and convicting the petitioner on said admitted false

and arbitrary plea;

4 /      There is no verified evidence in the record that the

trial  court properly ordered the petitioner chained and muzzled in

presence of the jury for objecting to the admitted false Plea of

Not guilty by reason of Insanity , and petitioner denies any  verified

evidence exists to  the contrary;

5 /      There is no verified evidence in the record that the petitioner

had effective legal Assistance in trial for his defense, and petitioner

denies any verified evidence exists to the contrary.

6 /      There is no evidence of a complete and correct trial Court

transcript disclosed for review in case No.272227, and  petitioner

denies any verified evidence exists to the contrary.

7 /      That it should be noted, that on August 13, 2014, the

respectable judge William Ryan by Order, did obtain documents claimed to be

both the 1965 Reporter's transcript ( reporter's  transcripts on Appeal of

the above referenced case, which records was reported doctored  and used

to mislead / undermind   previous judges to make decisions without disclosure and

2

review of the Newly Evidence ( trial Records ) suppressed by the
prosecution.

May 1, 2014, Superior Court judge William Ryan presented a
letter telling of the Microfilm image of the case file was missing.

To review the real record, the court's would long ago discovered
the doctored transcript's referred as reporter's transcript's falsely
reflect the Plea of not guilty by reason of insanity being withdrawn
July 26, 1965, first day of jury trial.    The plea of not guilty
by reason of insanity was instructed upon the jurors during the
Prosecution attorney's opening statement telling the jurors that the
defendant pleaded being insane at time he committed the crime of kidnap
to rob.    Closing Argument by the District Attorney, and the Court's
jury instruction was centered around the plea of not guilty by reason
of insanity- used to deliberately prejudice the jury to convict the
petitioner.

8 /    Jurors not only heard the false plea, but they witnessed the
petitioner muzzled and chained in their presence for objecting to the
prosecution's open statement, regarding the plea being false ...
Had the insanity plea been withdrawn July 26, 1965, the petitioner
would have testified as to his innocence as he did in May 27, 1965
original trial

The insanity plea was not withdrawn until July 28  1965
while the jury was deliberating.  The mob styled false insanity plea
was used to prejudice the trial jury, and prejudice appellate judges. 1 /

9 /    There is no verified evidence of the 9th Circuit Court

_____  3  _____ 7

Foot Note:1 /    In pending Mandamus proceedings ( Magee Vs- U.S. District
Court Judges, No. 20-70835, 9th Cir. evidence shows jury acquittal of
1973 suppressed in connection with The L.A  Trial  Records
suppression.

of appeal reviewing the correct or full trial Court

transcript s upon making the decision in Magee Vs- NELSON

(1972) 455 F. 2d 275, assuming by **piece**-Meal review that

(1) Petitioner was afforded effective legal assistance,

(2) Petitioner was not prejudiced by the Plea Of Not Guilty

by reason of Insanity, (3) the trial Court judge properly

Ordered Petitioner Muzzled and chained in presence of the

Jury upon warning him several times about Out-bursts, and

(4) petitioner was afforded proper transcript's on appeal,

and (5) Petitioner deliberately by-passed his state Court

Appeal ( December 1965 )

    New evidence discovered will prove the 9th Circuit

Appeal Court abused its discretion by failure to review

the full and correct trial Court record which it was asked

to do.

10./      CALIFORNIA GOVERNOR HAS AUTHORITY TO RELEASE

          PETITIONER BY PARDON

    Application for Pardon was filed April ___.2020 by

the petitioner with the California Governor based on

the Prima Facie issues before the Court of lynch-court

convictions and coverup

    The chief District Attorney of Los Angeles

( RESPONDENT ) was asked by the petitioner to tell the

governor truth of INNOCENCE supported by the New Evidence

Discovery that mandate a Pardon release- because judges

has demonstrated fear to rule against a trial and conviction

mob dominated. ( See BANNER Marked Exhibit-1, attached

hereto ).                    4

Picture, say more than a million piece Maal review documents
worded non-sense.

### THE SUPPRESSING OF TRIAL COURT RECORDS
### COULD NOT BE CORRECTED IN 1965

There is no verified evidence in the record that the
Prosecution officials failure to provide Petitioner with
an accurate trial transcript within a reasonable to perfect
his constituted an external factor out of petitioner's control
that suffice as cause for the dismissal of the # 11545 appeal.

Records shows the petitioner's timely request for
the correcting of transcript's issued on appeal, which the
trial judge ( Walker) responded in a letter dated November 16,
1965 that he would hold a hearing regarding the correcting
of the record. To disclose the record requested by the
petitioner, the prosecutoial misconduct showing by evidence
suppressed in the criminal proceeding would expose the
entire mob 's stage and players not only withheld exculpatory
evidence but knowingly introduced and argued false insanity
plea.

New evidence (record) shows the original trial on May 27,
1963 that no kidnap to rob crime occurred prior to petitioner
being arrested March 23, 1963. The doctored transcripts and
the false insanity plea divert the review to another subject.

There is no verified evidence in the record that
the jury hearing the false insanity plea did not convict on
evidence amounting to less than proof beyound a reasonable

b                    6

doubt.

## CONCLUSION

Since respondent and the Court has nothing to rebut petitioner's constitutional claims showing imprisonment on mob style corruption in the suppressing or destruction of trial Court records this Court should notify the California Governor of the prima facie issue or direct the District Attorney in Chief of Los Angeles County to recommend that the Governor Intervene- grant Pardon releasing the petitioner from illegal imprisonment.

I certify under penalty of perjury the foregoing is true and correct.

Dated: April 27, 2020

RUCHELL MAGEE

Ruchell Cinque Magee
CMF, A92051- T-115
P.O. Box 2000
Vacaville, CA 95696

In The SUPERIOR COURT OF THE STATE

OF CALIFORNIA, COUNTY OF LOS

ANGELES

People of The State Of California,    )    NO. 272227

          Plaintiff,    )

          Vs.    )    INFORMAL NOTICE AND MOTION

RUCHELL MAGEE,    )    FOR DISCOVERY AND AFFIDAVIT

          Defendant    )    IN SUPPORT (APA 5 USC §§ 701-

          )    702 )

    NOTICE TO ALL PARTIES OF INTEREST, petitioner Ruchell Magee by
special appearance moves the Court to augment the record of the Informal
Proceedings among the Parties by Notice and motion for Discovery and
Affidavit in Support in the form of Interrogatories and Denial of all
alleged charges and claims, as an Informal Request for the Production
of verified Documentary evidence to Promote fairness and to ascertain
the truth / facts of all allegations and claims for the records, to
exhaust all administrative remedies prior to seeking judicial
review from the respondent.

    The Court may grant the respondent twenty (20) Calendar days
from the date of this Notice for Discovery and Affidavit in
support to rebut this Motion and affidavit, vis a counter

1

RECEIVED

[JUL 2 1 2020

CLERK SUPREME COURT

EXHIBIT g

affidavit as a point by point basis to the dacts contained therein are true, correct, complete and not misleading, under penalty of perjury and full commercial libaility signed bedore a Notary Public witness.

Failure to respond as indicated will be deemed a non-response and default will be entered into the record against said respondent's. Silence is acquiescence and can only be equated Fraud when there is a legal duty to respond in writing on and for the record.

                    VERIFICATION
    I the undersigned petitioner herein affirm, states

and verifies that the foregoing is true and correct, complete and not misleading. Admissibility of evidence as exception to the hearsay Rule of the evidence code under penalty of perjury and full comercial liability of the law of the state of California.

Dated: April 5, 2020

                                    SUBMITTED  BY:

                                    RUCHELL   MAGEE

2

STATEMENT OF THE CASE

On July 28, 1965, the petitioner was convicted by jury trial in the Superior Court Of Los Los Angeles County, State Of California, ( Case Number 272227.) on the Charge of kidnap to Rob (violation of Penal Code 209/211).

On August 23, 1965, the petitioner was sentenced to life imprisonment. APPEAL INVOLUNTARY DISMISSED

Timely appeal was filed, Case No.11545 .) Cal. 2nd App.)
On December___, 1965, the Appeal was dismissed

at request of the petitioner - because the transcript on appeal was incorrect, incomplete and habeas Corpus proceedings was taking.

STATEMENT OF THE CASE

Prior to the above-mentioned, On March 23, 1963, the petitioner and a Co-dendant Stewart was arrested by the Los Angeles County Police ( Firestone Station.)

Preliminary Hearing And Original Trial Proceedings

Preliminary hearing was held in the Los Angeles County Municipal Court.

April ____, 1963, during the arraignment and plea, the petitioner and Co-defendant both entered NOT Guilty Plea to the charge of kidnap to rob ( violation of Penal Code Sections 211 and 209 .)

On May 23, 1963, original jury trial commenced with jury.

During trial, the Prosecution's chief witness Mr. Borown testified that the petitioner and Co-defendant approached him at the club Troopic Cando in Los Angeles County and petitioner gave him some money for a ride. Because it was not enough money, he Brown refused to drive the petitioner and Co-defendant Stewart to the LOcation requested.

That the petitioner pointed a gun at him ( Brown), and taking over his Car. That Stewart got in the back seat.

That Stewart took $10. from him, and Brown jumped out the car and called the police.

Petitioner and Stewart was arrested by the police while sitting in Brown's car.

Petitioner testified in his own behalf that he did not rob nor kidnap Brown. Only has a misunderstanding over a young lady ( Barbara ).

Two eye-witnesses ( Mr. Burris and Mr. Lerr ) testified

in behalf of the petitioner and Stewart that Brown

and the petitioner had augument about the way the

petitioner was dancing with a lady at the Club Tropicano

approximately two weeks prior to the arrest March 23, 1963.

The witnesses testimony impeached the Prosecution's

Witness Brown's story about never knowing or every seeing

the petitioner prior to March 23, 1963.  Further,

Brown's testimony repeatedly changed during cross-

examination by Court appointed Counsel Leon Mayer

where Brown repeatedly changed the name of the young

lady who was with Brown and the Petitioner March 23, 1963

at the Club and in the car at all times mentioned.

Recognizing that Brown's testimony to false and

inconsistency for exceptance, the Prosecution attorney

and Public defender ( Marshall Schulman and J.Stanley Brill )

entered their personal guilty Pleads to the charges of

kidnap to rob, in the petitioner and Stewart's behalf,

over the petitioner's expressed objection.

( Clerk's Minutes May 27, 1963 reflect the officers of

the Court's guilty plea- which was deleted from the

Official's Court Reporter's Transcripts . )

During closing argument, the prosecutor Schulman

told the jury ( who consisted of all White people-monsely

old women ) that Mr. Brown's testimony could not be used...

To convict Stewart and Magee ( defendants) on the guilty

plea.

May the Court take judicial notice that the

prosecution admitted that it had No Sufficient Evidence

to Support the conviction upon entering its false guilty

Plea ?

Before petitioner could complete his once jeopardy plea,
the Court ordered him removed, and appointed two
psychiatry's to examine the petitioner.

During trial AUgust 1965, the Court appointed
psychiatry's refused to show up.

Prior to trial, the petitioner filed Motion For
Dismissal of Court appointed jacke based on conflict of
Interest; BASED ON ENTERING THE FALSE INSANITY PLEA.

On Jul 7, 1965, or about, the Superior Court
judge ( Herbert V. Walker) denied petitioner's Motion
for Dismissal of Counsel because the Court stated that
Mr. Jacke was a find lawyer.    The Court failed to
provide Marsden-Hearing. as required by law governing
Counsel's being challenged for conflict of Interest.

On July 26, 1965. the prosecutor (John Demark)
acting deputy prosecutor under supervision of Evelle J.
Younger made opening statement to the jurors ( all
White People with the exception of One negro woman) that
defendant Magee pleaded Not guilty by reason of Insanity
to the crime of kidnap to rob, and that he ( the
District Attorney ) would prove defendant Magee committed
the crime charged- but was claiming to be insane at the
time that he committed the crime...

     Illegal Shackled    In Presence Of The Jury

     Petitioner was ordered chained and muzzled for
objecting to the false Plea and the prosecution attorneys
prejudicial remarks regarding the insanity plea entered
by the ineffective assistance forced upon the petitioner.

7

The prosecutor's chief witness Brown testified

the same as he did the original trial , however, without
cross - examination of worth .

Court appointed Counsel Jacke failed to Call witnesses
in the petitioner's behalf who had once proven Brown
lying at the original trial.

Petitioner did not testify - because of the

transcript on Appeal was incomplete- and incorrect.

Petitioner locked in lynch mob catch-22 false
Insanity did not expect to get a fair trial upon being
muzzled in presence of the jury who heard the false plea of
insanity plea- which destroyed his Evidence of INNOCENCE
DEFENSE; THEREFORE did not try to explain any further
in the same court that allowed its counsel and District
attorney to incriminate petitioner with the false plea
entered against the petitioner.    Insufficient evidence
clearly proves Innocence- because the conviction's rest on
the false insanity plea.  The state has nothing to rebut
false misrepresentation on part of Court appointed Counsel
and the District attorney.  To be sure;

on July 28, 1965, several Black people ( some
related to the petitioner appeared in Court while the
jurors was out deliberating.

Once Court appointed Counsel Jacke and the
trial Judge Walker looked in the direction of the people
who walked in the Court, the Court appointed Counsel
(Jacke) rushed from its seat and told the trial judge
the " Plea of not guilty by reason of Insanity was made

by mistake, over defendant's objection. With that statement,
the Counsel motion to withdraw its plea of not guilty by
reason of insanity.

Acting without jurisdiction, the trial judge ordered
the plea of not guilty by reason of insanity withdrawn,
and stated: " Counsel committed misrepresentation, that
if the jury found defendant guilty - he would get a New
trial... "

Moments later July 28,   1965, the Court allowed
the jurors to anounce their guilty verdicts; here the
court should note that the trial judge's statement
do not show in the official Court Reporter s transcript
issued on appeal herein mentioned, nor transcripts used
by previous Courts in habeas Corpus proceedings.

The New evidence reviewed will prove the
petitioner s claims.

(a) Counsel's performance was deficient- it s
representation fell below an objective
standar of reasonableness under prevailing
professional norms;

(b) As result of counsel's conduct, the
trial judge and prosecution Attorney failed
to fulfill their ethical obligations to
petitioner and the AMerican People.

The Court knew of the false Insanity
Plea at time it denied the petitioner's Motion for
Dismissal of Counsel July 7, 1965. (R.T. pp 2-3, May 18, 1965.)

(c) Insufficient evidence to support
the charge of kidnap to rob

(d)  Unlawful use of restraints in presence of the jury because the petitioner objected to the plea of not guilty by reason of insanity.

### WRONGFUL APPELLATE COURT DECISION

It was position of the 9th Circuit Court of appeal that

1. Petitioner was afforded competent representation at his trial in 1965, and the court properly acted upon ordering the petitioner muzzled and chained for making outbursts, which the court warned him about... That the insanity plea did not violate petitioner- because it was ordered withdrawn...( Magee V. Nelson (1972- 9th cir.) 455 F.2d 275 ).)

The Court of appeal made improper ruling, based on piece-meal review on habeas corpus appeal where the respondent suppressed the evidence of the trial Court proceedings.    New evidence clearly impeaches the Court of appeals finding in this matter.

### PENDING PROCEEDINGS AT APPELLATE LEVEL

Related proceedings in this this matter are pending in the California Supreme Court where jury acquittal shows concealed in the 1973 San Francisco County trial showing the petitioner found not guilty by 12-jurors on the 1970 Marin County indictment charge of kidnap.  Evidence shows the petitioner fighting his life against false imprisonment tried to reach TV/RADIO News to expose the Los Angeles County frameup .  The related case's are being challenged.

Goverment agencies concealing acquittal and the L.A. County trial court record (Evidence) uses the same pattern in frameup of 1970 ongoing  prosecution suppressing evidence  ( Records )

1    The 1965 Court record (# 272227) show on August 23, 1965

2    the Superior Court Of Los Angeles County issued a life imprisonment

3    sentence, while acting without jurisdiction .

4    The Superior Court of Santa Clara County, acting without

5    Jurisdiction, on January 25, 1975 issued its life imprisonment

6    to run together with the LOs ANgeles County sentence in the

7    case of innocence supported by jury acquittal.  The case is

8    also pending in the 9th Circuit Court of Appeal entitled

9    Ruchell Cinque Magee Vs- United States, et al., NO.20-70835

10    showing government agents concealing acquittal with nothing to

11    show for subjecting the petitioner to imprisonment decades

12    illegal.

13                STATEMENT OF FACT

14    Petitioner make a special compulsory appearance to invoke a

15    challenge to the respondent's authority and both personal and

16    subject Matter jurisdiction to enter any invalid and unlawful

17    orders or judgments in the case at bar.  Petitioner contends

18    under penalty of perjury that he is innocent.

19    The May 27, 1963 trial court record ( Clerk's minutes show

20    guilty plea by officer's of the court went to the jury ) in a

21    case of insufficient evidence to support the charge.

22    The July 26, 1965 trial court record ( #272227 ) show conviction

23    on false evidence (insanity plea) admitted being false - which

24    used to prejudice the jury to convict the innocent petitioner

25    for the crime of kidnap to rob, which proven in court May 27, 1963

26    never occurred prior to  the petitioner  being arrested March 23, 1963.

27

The conflict between counsel and client resulted in the
petitioner beings:

   1. Unlawfully chained and muzzled in presence of the
      jury for objecting to Counsel's False Plea of
      Insanity stemming from deficient performance.

   2. Subjected to prosecution use of the false evidence
      and misrepresentation to convict innocent petitioner.

   3. Insufficient evidence to support the conviction ...

   4. Convicted in a court acting without jurisdiction
      to prosecute petitioner ...

   4. The trial court upon ordering the false plea
withdrawn stated finding counsel's performance deficient
prejudiced petitioner's defense.

   5. Prosecution obstructed appeal review
of the suppressed record —caused the involuntary dismissal
of Appeal.  Further withheld the record (evidence) to
obstruct habeas review in the case entitled In Re Ruchell Magee
No. 60557, Superior Court of Marin County ( 1972 ) upon disobeying
the Court's order for all records in case Number 272227.
( Exhibit-1, attached hereto. )

The evidence withheld by the respondent  and undiscovered
by previous courts denying petitioner's legal documents for decades
precluded a defense  of  insufficient evidence and false conviction .

INTERROGATORIES

Respondent is asked do deny that petitioner was convicted on
the false guilty and insanity pleads by officers of the court ?

Does respondent have any evidence that  the

court did not abuse its discretion by failure

to hold Maredán-hearing regarding conflict

of interest between counsel and client   where the

claim was brought by petitioner prior

to trial ?

Do respondent have any documented evidence

that the prosecution attorney's did not commit

jury tampering upon using false insanity Plea

to undermind the jury to convict Innocent Petitioner

OF a crime of kidnap to rob that proven never

occured prior to petitioner being arrested March 23,

1963 ?

I certify under penalty of perjury that the doregoing

is true and correct

Dated: April___, 2020

RUCHELL CINQUE MAGEE

AFFIDAVIT OF FACT

( In Support ( CCP Sec  2011 )

I, Ruchell Magee, affirm, state and verify under penalty
of perjury and full commercial liability as follows:

1)      I am the petitioner in the above entitled matter
or action;

2)      I am competent to state matter setforth herein;

3)      I have first hand knowledge of  the facts stated
herein;

4)      That there is no verified evidence in the record
that petitioner do not make a special compulsatory
appearance herein to invoke a challenge to the respondent's
and Courts personal and subject-matter jurisdiction on and
for the Official Court Record as petitioner has just
obtained New Evidence  that the Court may have entered
Orders and judgments in want of authority within the last
thirty (30) calendar days and invokes this challenge to
ascertain the true, correct and complete facts for the
record, and the petitioner denies any verified evidence
exist to the contrary;

5)      Petitioner asserts that there is no verified
evidence  that the jury was not prejudiced by the false
guilty and insanity pleads entered by officers of
the Court in case Number 272227;

6)      That the petitioner was denied effective aid
of Counsel during trial, and the preliminary proceedings
where counsel's failed to adequally investigate the
facts surrounding the case as the record shows Counsel

A

1   entered a plea of Not Guilty by reason of insanity to
2   the charge of kidnap to rob, over the petitioner's expressed
3   objection.
4   7)  There is no verified evidence in the record that
5   the petitioner was convicted on sufficient evidence to
6   8)  There is no verified evidence that the petitioner
7   was muzzled and chained properly in presence of the
8   jury during trial for objecting to the Plea of Insanity,
9   which the trial Court later admitted being unlawful
10  performance by counsel.
11  9)  The prosecution withheld evidence of innocence
12  showing by records of the original trial where it entered
13  a false-guilty plea to the kidnap to Rob charge used to
14  undermind the jurors to convict innocent petitioner
15  10)  The respondent's and the Court failed and refused to
16  disclose the complete and correct records on appeal and
17  during habeas corpus proceedings- denied petitioner access
18  to Court, and delaying legal review for over 55 years in
19  this matter.
20  11)  The trial Court allowed the Plea of Insanity to be
21  heard by the jurors, and during deliberations Ordered the
22  plea withdrawn upon finding it to be false misrepresentation
23  by counsel.   The Court claimed the petitioner would get a
24  new trial, if the jury convicted him upon hearing the plea.
25  However, the court forgot to order new trial.
26  I certify under penalty of perjury the foregoing is true and
27  correct. Dated: April 7th, 2020
28  S/                                    RUCKELL CINQUE MACEE
    Witness

Ruchell Cinque Magee
CMF, A9 2051 # T-115
P.O. BOx 2000
Vacaville, CA 95696


            Office of Clerk
    Superior Court Of Los Angeles County

      210 W. Temple Street

    Los Angeles, CA 90012

            **MOTION FOR JUDICIAL NOTICE**

            Case NO 272227

Respectable Judge Presiding, **William Ryan**,

            What Discovery Of New Evidence reqires

opening of the entire case (No.272227) where one lying

person pointed the finger at me was'nt enough to

convict me until the police, the prosecuters; the

court appointed lawyer and judge entered their

personal false guilty and insanity pleads to the

charge kidnap to rob .  The illegal life sentence

with the kangaroo-court doctored transcripts made

their way to every government computer where making

it appear those false and incriminating pleads never

exist, and Magee should never be allowed to  leave

prison alive.

            This explain why I rebelled August 7, 1970

in Marin County in effort to reach TV/Radio News to

expose the frameup steming from the judicial misconduct

now showing by documented proof.

            Of all the thousands of indigent prisoners

complaining in courts of false convictions, not one has

been proven wrongfully convicted by the California

Department of Corrections computer where judged by

CLERK SUPREME COURT

JUL 21 2020

RECEIVED

RECEIVED

JUL 21 2020

EXHIBIT_3

May 21, 2020                                               2

what kept the number One secrete in the criminal
Justice System: " The prison system's computer."

According to the CDC Computer, Ruchell Magee was
legally convicted, and of the more than 56 years in
prison the Parole Board Commissioners found Magee
unsuitable for Parole release 15 times and recommended
self - help - that he remain disciplinary free  and
learn a program trade before allowed judged suitable
for Parole Release.

Meanwhile, I maintain that the only thing I need
is to find a reasonable jurist with courage to look
beyond the CDC Computer hype and the doctored transcript
hype, and Ruchell Cinque Magee will be released from
unlawful imprisonment according to facts; and evidence
documented, and law that's written in the Book.

Once again, I ask the judge Presiding in the
pending Discovery proceedings to fliped the pages 1,2, 3
and check the date on page 4 July 26, 1965 .  Compare
the Affidavit of Ruchell Magee in the proceedings calling
for Discovery and entry of Default .  Affidavit proves
the false plea of not guilty by reason of Insanity was

entered by Court appointed Clay M. Jacke May 18, 1965,
over my expressed objection, and went to the Jurors
July 26, 1965 by the District Attorney's opening statement
and Closing argument .  That plea was ordered withdrawn
July 28, 1965, while the jurors was convicting me on the
belief that the insanity plea was my admission of guilt
to the crime of kidnap to rob.

After the jury announced their guilty verdicts, the
judge ( Herbert V. Walker ) informed them the plea

2

CLERK SUPREME COURT